UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA GAWEL, | CASE NO.  20-CV-1744-H(WVG) |
| Plaintiff, | ORDER ON DISCOVERY DISPUTE |
| v. | [Doc Nos. 38-39.] |
| RADIUS HEALTH, INC. *et al.*; | |
| Defendants. | |

Defendant has asserted the attorney-client privilege, work-product doctrine, or both to 177 documents that it has either produced redacted or completely withheld. As explained below, the Court finds neither doctrine applies to the underlying investigation materials, but the attorney-client privilege does apply to the items in Defendant's privilege log. The Court also finds the work-product doctrine does not apply.

## I.   BACKGROUND

Defendant hired an outside law firm, Loeb & Loeb, LLP ("Loeb"), to investigate an anonymous hotline complaint about misconduct that involved Plaintiff and ultimately led to her termination. Initially, this was the sole reason for Defendant's retention of Loeb. In October 2019, Loeb interviewed Sandra Chavez,

the main employee at the center of the anonymous complaint, as well as several other employees, including Joe Kelly, Chad McGuckin, JJ Roth, Rikki Martin, and Plaintiff. On November 7, 2019, Defendant terminated Plaintiff based on the investigation's findings that she had committed compliance violations.

At certain points during the investigation, Defendant also sought Loeb's advice and counsel, and Loeb provided Defendant with its attorneys' impressions and analyses regarding matters tangentially related to the investigation. For example, Defendant sought advice regarding messaging that Defendant should use during the pendency of the investigation. Further, Defendant also sought Loeb's input on how Defendant could address or remedy the violations the investigation uncovered.

## II. DISCUSSION

### A. Attorney-Client Privilege

The Court's first task is to determine whether Defendant, as the party invoking the attorney-client privilege, has met its burden to establish prima facie showing of its applicability. In doing so, the Court looks to the dominant purpose of Loeb's relationship with Defendant. The Court concludes that Loeb's dominant purpose was generally that of an investigator and not an attorney. Accordingly, the Court finds the attorney-client privilege does not apply to Loeb's investigation materials. However, it does apply to tangential communications between Loeb and Defendant when Defendant sought Loeb's advice as its attorney.

1. State law governs attorney-client privilege issues in federal district courts sitting in diversity. Fed. R. Evid. 501; *Star Editorial, Inc. v. Dangerfield*, 7 F.3d 856, 859 (9th Cir. 1993). Under California law, "evidentiary privileges such as the attorney-client privilege are governed by statute." *HLC Props., Ltd. v. Sup. Ct.*, 105 P.3d 560, 563 (Cal. 2005). California Evidence Code section 954 confers a privilege on the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." "Confidential communications include information transmitted between attorney and client, and 'a

legal opinion formed and the advice given by the lawyer in the course of that relationship.'" *Calvert v. State Bar*, 819 P.2d 424, 431 (Cal. 1991) (quoting Cal. Evid. Code § 952). "The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Costco Wholesale Corp. v. Sup. Ct.*, 219 P.3d 736, 741 (Cal. 2009). Moreover, it does not matter that the communication was not made in anticipation of active or threatened litigation. *Id.* at 741 (citing *Roberts v. City of Palmdale*, 853 P.2d 496, 500 (Cal. 1993) ("[T]he attorney-client privilege applies to confidential communications within the scope of the attorney-client relationship even if the communication does not relate to pending litigation; the privilege applies not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened.")); *Wells Fargo Bank v. Sup. Ct.*, 990 P.2d 591, 596 (Cal. 2000).

The dispositive factor here is the relationship between the attorney and party. Thus, "[t]he party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of the attorney-client relationship." *Costco Wholesale Corp.*, 219 P.3d at 741. "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.* (citing Cal. Evid. Code § 917(a)).

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication. Under that approach, when the party claiming the privilege shows the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Clark v. Superior Court*, 125 Cal. Rptr. 3d 361, 372 (Cal. Ct. App. 2011) (citation omitted).

"[W]hen an insurer hires an attorney both to provide a legal opinion and to serve as [an investigator], the court must make a determination of which purpose was primary." *McAdam v. State Nat'l Ins. Co.*, 15 F. Supp. 3d 1009, 1015 (S.D. Cal. 2014).

2. Here, it appears Loeb served a dual purpose. Defendant initially and primarily hired Loeb to investigate the anonymous allegations against Plaintiff and others. Loeb did this and concluded that Plaintiff and others engaged in misconduct. Thereafter, Defendant sought Loeb's counsel on what remedial measures Defendant should implement to address the misconduct. Thus, the dominant purpose of Loeb's relationship with Defendant was that of an investigator and not as attorney and client. Defendant acknowledges this and acknowledges that Plaintiff is entitled to the underlying investigative documents: "Radius acknowledges that any documents that were reviewed by Loeb for the purposes of the Loeb Investigation are not privileged. Similarly, any factual findings that Loeb uncovered during the course of the Loeb Investigation or recommendations made by Loeb for Radius to consider in light of those findings are not privileged where such findings and recommendations do not contain the impressions and analyses of legal counsel." (Doc. No. 29 at 5.) Thus, as Defendant acknowledges, the Court finds that (1) documents reviewed by Loeb for the investigation, (2) any factual findings Loeb made, and (3) Loeb's remedial recommendations are not privileged and must be produced if Defendant has not already done so.

2. The foregoing notwithstanding, Defendant contends that insofar as any of the above three unprivileged categories contain Loeb's impressions or analysis, they are privileged because these go beyond Loeb's hired purpose "to uncover facts." (*Id.*) However, Defendant is splitting hairs and casts Loeb's role far too narrowly. The Loeb attorneys functioned primarily as investigators here. As part of their investigation, they prepared a "Summary Investigation Report" as well as other

documents, including separate memoranda for each person they interviewed.[1] Any impressions or analysis contained in these documents were drafted in their role as investigators—not legal counsel. As such, these investigatory impressions and analyses fall within the investigator-client relationship that Defendant has already acknowledged does not cover at least some portions of Loeb's investigation. It would be overly restrictive—and illogical—to limit disclosure of any impressions or analyses contained in investigation reports, summaries, or memoranda when the Loeb investigators made these impressions and analyses while acting in their roles as investigators.[2] Such a restrictive position would shield otherwise unprivileged and discoverable material from disclosure simply because the investigator happens to be an attorney but would not shield this material if the investigator is a non-attorney. The Court declines to accept such an incongruous result, as it would encourage the use of attorneys as investigators with intent to shield otherwise discoverable materials from discovery.[3] Thus, just as the underlying facts uncovered by

---

[1] The Court has reviewed redacted and unredacted versions of the Summary Investigation Report. The Court has not reviewed any of the interview memoranda.

[2] Defendant did not cite—and the Court is not aware of any—authority for the narrow position it advocates.

[3] *See generally Wellpoint Health Networks v. Sup. Ct.*, 59 Cal. App. 4th 110, 127 (Cal. Ct. App. 1997) (quoting *Andrews v. Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990) ("[The employer] has attempted to utilize the results of [the attorney's] investigation both as a defense to liability under Title VII and as an aspect of its preparation for the sexual discrimination trial itself. By asking [the attorney] to serve multiple duties, the defendants have fused the roles of internal investigator and legal advisor. Consequently, [the employer] cannot now argue that its own process is shielded from discovery. Consistent with the doctrine of fairness, the plaintiffs must be permitted to probe the substance of [the employer's] alleged investigation to determine its sufficiency."). Yes, the Court recognizes that Defendant has not claimed wholesale privilege as to Loeb's investigative materials. However, the Third Circuit's observations in *Andrews* remain germane here.

investigators are discoverable under the circumstances of this case, so too are the investigators' impressions and analyses.

Having reviewed redacted and unredacted versions of the Summary Investigation Report, the Court finds none of the redactions therein were justified under the Court's analysis here.[4] Accordingly, Defendant shall produce an unredacted version of the Summary Investigation Report. And to the extent that any of the Loeb investigators' interview memoranda have been withheld or redacted based on the position that the attorney-client privilege protects the investigators' impressions and analyses, so too shall those documents be produced without redactions.

3. Next, Defendant contends communications related to legal advice Loeb provided during its investigation are privileged. These instances include seeking advice on "messaging that [Defendant] should use during the pendency of the investigation." Here, the Court agrees because privileged communications may occur unpredictably during the course of an investigation. Thus, while the dominant purpose of Loeb's retention was to investigate the anonymous complaint, Loeb nonetheless may have been called upon to provide legal advice that was related to the ongoing investigation. On these instances, those communications are protected.

The Court finds *Kaiser Foundation Hospitals v. Superior Court*, 78 Cal. Rptr. 2d 543 (Cal. Ct. App. 1998), instructive here.[5] There, the plaintiff sought communications between Kaiser's in-house counsel and a Kaiser employee who had been tasked with investigating sexual harassment allegations. The Court of Appeal

---

[4] To the extent Defendant claims these are protected by the work-product doctrine, the Court addresses this doctrine later in this Order.

[5] Although the investigator in that case was a non-attorney and the adequacy of the investigation was directly at issue, the Court finds these distinctions are not particularly pertinent, as the Loeb investigators were primarily acting as any other investigators but just happened to be attorneys.

considered whether disclosure of the investigation file waived the attorney-client privilege as to communications between the investigator and in-house counsel. The court held that "[w]here a defendant has produced its files and disclosed the substance of its internal investigation conducted by nonlawyer employees, and only seeks to protect specified discrete communications which those employees had with their attorneys, disclosure of such privileged communications is simply not essential for a thorough examination of the adequacy of the investigation or a fair adjudication of the action." 78 Cal. Rptr. 2d at 548. So too here, the disclosure of the Loeb investigators' communications with Defendant's in-house counsel are not essential given that what Plaintiff seeks is the substance of the investigation. That substance is found in the investigation report and interview memoranda—not in communications with in-house counsel. It follows *a fortiori* that Defendant's communications are protected when its investigators were called upon to don their attorney hats and advise Defendant on legal matters.

While the Court recognizes that the foregoing finding may shield some pertinent information from discovery, the California Court of Appeal has also acknowledged this concern and explained the balancing of policy considerations at play:

> We recognize, of course, that a defendant's assertion of the attorney-client privilege and the work product doctrine is in direct conflict with a plaintiff's right to discovery and production of documents. We also appreciate that certain aspects of Kaiser's investigation in this case may not come to light because of the claim of attorney-client privilege and the work product protection. However, this situation is no different than other instances in which relevant information may be shielded from discovery based on the assertion of a privilege. Inherent in the recognition of both the attorney-client privilege and the work product doctrine is the policy of encouraging candor in the attorney-client relationship. That important policy would be defeated if all privileged communications regarding employment investigations were ordered disclosed in every case where the adequacy of an employer's internal investigation is placed in issue, regardless of whether or not the investigation itself was performed by an attorney.

*Kaiser Found. Hosps.*, 78 Cal. Rptr. 2d at 549. The Court also recognizes and appreciates these concerns, but finds its rulings here strike an appropriate balance between Plaintiff's need for discovery and Defendant's right to seek and receive confidential advice of counsel.

Of the 177 items on Defendant's privilege log, the Court has reviewed *in camera* eight redacted documents and sixteen withheld documents. Defendant selected these documents and provided them to the Court. Based on the discussion above, the Court finds these specific documents were properly redacted or withheld. However, *Plaintiff* will now have the opportunity to select additional documents for *in camera* review. Accordingly, Plaintiff may select 15 redacted documents and 30 withheld documents and notify Defendant of its selections.[6]

    4.    Finally, Defendant contends Loeb's advice on Defendant's remediation efforts are privileged because this matter goes beyond Loeb's original fact-finding role. To the extent that Defendant's contention here relates to Loeb's *advice* contained in *communications* with Defendant, the Court agrees to an extent. The Court reaches this conclusion not based on Defendant's contention that "this goes beyond Loeb's original fact-finding role," but because Loeb had at this point been asked to advise Defendant as its attorney—a nuanced but important distinction. That being said, to the extent that the Summary Investigation Report contains the investigators' remediation recommendations, the Court notes that the redacted version of the report did not contain redactions of *any* of the remediation recommendations.[7] As a result, they may not now be redacted.

---

[6] To avoid selection of duplicate items, Defendant shall notify Plaintiff which log items it chose to provide the Court *in camera* by providing Plaintiff those log numbers.

[7] Based on the findings above, the Court does not reach the issue of waiver.

**B.     The Work Product Doctrine**

Defendant has also withheld numerous documents based on the work-product doctrine. This doctrine is independent of the attorney-client privilege, has its own criteria and nuances, and it must be analyzed separately. Because none of the documents on the privilege log were prepared in anticipation of litigation, this doctrine does not apply here. Accordingly, Defendant may not redact or withhold documents based on this doctrine to the extent this is the *sole* basis upon which Defendant relies.

The work product doctrine is not a privilege but a qualified immunity that protects documents and tangible things from being disclosed during discovery that have been prepared by a party or his representative in anticipation of litigation. *Miller v. Pancucci*, 141 F.R.D. 292, 303 (C.D. Cal. 1992). The federal work product doctrine was established in *Hickman v. Taylor*, 329 U.S. 495 (1947) and is now codified in Rule 26 of the Federal Rules of Civil Procedure. *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003). Rule 26(b)(3)(A) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . . ." If a court orders production of such materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

The primary purpose of the doctrine is to provide protection against litigation adversaries. *United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1120 (9th Cir. 2020); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) ("The primary purpose of the work product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.'") (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)). Thus, work product "is guarded against discovery only if prepared in anticipation of trial[, and] mental impressions

of an attorney in service to other objectives, such as negotiation of a transaction, are not protected by the doctrine." 8 Fed. Prac. & Proc. Civ. § 2026 (3d ed.) (footnote omitted).

"To be protected by the doctrine, the primary motivating purpose behind the creation of the materials must be to aid in possible future litigation," and if there is a dual purpose to the preparation, the materials must have been created "because of" the impending litigation. *Anderson v. Marsh*, 312 F.R.D. 584, 592 (E.D. Cal. 2015) (citing *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011)). "Dual purpose documents are deemed prepared because of litigation if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *Richey*, 632 F.3d at 568 (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d 900, 907 (9th Cir. 2004)). In applying this standard, courts are required to consider "the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568 (internal punctuation and citation omitted).

The party who asserts the work product doctrine bears the burden of proving that the materials withheld meet the standards established to be qualified as work product. *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003). That party must show that the materials are: "1) documents and tangible things; 2) prepared in anticipation of litigation or for trial; and, 3) the documents or tangible things were prepared by or for the party or the attorney asserting the privilege." *Id.* If the privilege is found to apply, then the burden shifts to the party seeking discovery to show that "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *Garcia*, 214 F.R.D. at 591.

Here, there is no indication from Defendant that the documents withheld partly under the work-product doctrine were prepared in anticipation of litigation. Nor can there be because all the documents predated Plaintiff's November 7, 2019 termination. Accordingly, there could not have been pending or threatened litigation when these documents were prepared. And Defendant does not contend that it believed litigation was probable if it terminated Plaintiff. Accordingly, to the extent Defendant has withheld any documents based on the work-product doctrine, Defendant has not met its burden to show the doctrine's applicability.

### III.   CONCLUSION

**No later than August 31, 2021**, Defendant shall inform Plaintiff which log numbers it selected and submitted for *in camera* review.

**No later than September 2, 2021**, Plaintiff shall inform which log numbers she selects for further *in camera* review.

**No later than September 8, 2021**, Defendant shall submit Plaintiff's selections to the Court in the same format and manner Defendant previously submitted its own selections.

**No later than September 10, 2021**, Defendant shall produce to Plaintiff unredacted copies of the Summary Investigation Report and related interview memoranda.

To the extent any documents are redacted or withheld *solely* on the basis of the work-product doctrine, Defendant shall produce unredacted copies of those documents **no later than September 10, 2021**.

IT IS SO ORDERED.

DATED: August 26, 2021

Hon. William V. Gallo
United States Magistrate Judge